DARREN T. BRENNER
Nevada Bar No. 8386
DBrenner@LRLaw.com
LINDSAY C. DEMAREE
Nevada Bar No. 11949
LDemaree@LRLaw.com
LEWIS AND ROCA LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169
(702) 949-8200
(702) 949-8398 (fax)
*Attorneys for Defendant
Property and Casualty Insurance
Company of Hartford*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ARLENE HENDERSON, individually,<br><br>Plaintiff,<br><br>vs.<br><br>PROPERTY AND CASUALTY INSURANCE COMPANY OF HARTFORD;  DOES I-X, and ROE CORPORATIONS I-X, inclusive,<br><br>Defendants. | Case No. 2:12-cv-00149-KJD-PAL<br><br>**HARTFORD'S MOTION TO CONDUCT DISCOVERY IN PHASES** |

Defendant Property and Casualty Insurance Company of Hartford ("Hartford") moves this Court pursuant to the Court's inherent power to control discovery and Federal Rule of Civil Procedure 26 for an order granting Hartford's request to conduct discovery in phases.[1]

**I.   INTRODUCTION.**

This is a dispute over whether Plaintiff is entitled to underinsured motorist benefits under an automobile insurance policy she had with Hartford. Plaintiff seeks to expand what is, at most, a dispute over the value of her claim into a dispute involving bad faith, punitive damages, and various other extra-contractual claims. The District Court has already dismissed Plaintiff's extra-contractual claims once—finding that the allegations pled could not give rise to a single valid extra-contractual claim. Plaintiff has since attempted to replead these allegations; however, she

---

[1] Counsel for Hartford certifies that, after personal consultation with Plaintiff's counsel and sincere effort to resolve this matter without Court action, the parties have been unable to agree on this issue.

-1-

continues to fail to offer facts that, if true, would support a valid extra-contractual claim. The gravamen of her most recent attempt to plead extra-contractual claims is that Hartford was wrong for failing to ask its expert to consider certain treatments she received *after* the date by which the expert determined Plaintiff had fully resolved. These allegations cannot, as a matter of law, give rise to a claim for bad faith or any other extra-contractual claim. Accordingly, a second motion to dismiss, or in the alternative motion for summary judgment, is pending on Plaintiff's extra-contractual claims.

If and when Hartford's pending motion is granted, it will once again dispose of Plaintiff's extra-contractual claims. Nevertheless, Plaintiff continues to seek irrelevant and burdensome discovery regarding the extra-contractual claims that have already been once disposed, and will likely be disposed again. Moreover, the discovery she seeks does not even have anything to do with the allegations of her Second Amended Complaint, even in the unlikely event that the District Court denies Hartford's pending motion. Rule 8 "does not unlock the doors of discovery" where a party has failed to plead a valid claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007) (requiring proper pleading is the only way courts "can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the [discovery] process will reveal relevant evidence") (internal quotation omitted). And it certainly does not allow a party to coerce settlement by propounding unreasonable and burdensome discovery that has nothing to do with the pending claims. *See*, *e.g.*, *State Farm Mut. Auto. Ins. Co. v. Superior Court*, 804 P.2d 1323, 1326 (Ariz. Ct. App. 1991) (cautioning that allegations of bad faith are used to "coerce" settlement through burdensome extra-contractual discovery). Under *Iqbal* and *Twombly*, Plaintiff must plead facts that could support a valid extra-contractual claim before she is entitled to discovery.

Under the circumstances, discovery should be bifurcated between the contractual and extra-contractual claims. Any extra-contractual discovery regarding claim handling or the other matters sought by Plaintiff is relevant only if the extra-contractual claims survive. If compelled to participate in extra-contractual discovery prior to that time, Hartford will incur substantial costs, which are not only unnecessary if the District Court grants the second motion to dismiss, which

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada  89109

544542.1

will in turn threaten to coerce a settlement simply based on the cost of the discovery, not the merits of the case.

Accordingly, Hartford requests an order requiring the parties to conduct discovery in phases—one phase on Plaintiff's breach of contract claim (namely, the tortfeasor's liability and damages) and a second phase on any extra-contractual claims that remain after Hartford's second motion to dismiss is decided. This will encourage economy by limiting discovery to the viable contract claim now, and preventing unnecessary, burdensome discovery on claims that are very likely to be dismissed. In doing so, this request is consistent with Rule 1's goal of procuring just and inexpensive determinations of actions. *See* Fed. R. Civ. P. 1. The second phase, if the matter ever reaches that point, can address Hartford's decisions to obtain an expert records review and the timing of its correspondence, the only factual allegations proffered by Plaintiff in her Second Amended Complaint. And, of course, the parties will avoid the need for discovery related to any extra-contractual claims if and when the Court grants the second motion to dismiss or, in the alternative, motion for summary judgment.

## II. BACKGROUND.

Plaintiff is already on her third draft of the complaint. After exercising her right under Rule 15(a)(1) to amend her complaint once without leave, Plaintiff filed a First Amended Complaint. The First Amended Complaint sought to recover for breach of contract, contractual breach of the covenant of good faith and fair dealing, bad faith, and unfair trade practices (collectively "extra-contractual" claims) based on allegations that Hartford did not pay her underinsured motorist benefits. *See* Doc. 4. Plaintiff, however, failed to plead any facts to support her extra-contractual claims. Accordingly, Hartford moved to dismiss the extra-contractual claims because there were no facts that, even if true, could support these claims. *See* Doc. 6.

While the motion to dismiss was pending, Plaintiff served Hartford with written discovery aimed almost exclusively at the unsupported extra-contractual claims set forth in her First Amended Complaint. Ex. 1. Not only does she seek information concerning the handling of her own claim—which as a matter of law is relevant only if she is allowed to pursue her extra-contractual claims—Plaintiff also seeks, among other things, information concerning all training

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada  89109

-3-

544542.1

ever provided to any of Hartford's claim handlers, Hartford's employee bonus structure, every complaint filed against Hartford or its subsidiaries, etc., despite alleging no facts whatsoever regarding any of these subjects.

On May 21, 2012, Hartford timely objected to Plaintiff's discovery requests, both based on the pending motion and various other appropriate grounds. Ex. 2. On June 18, 2012, as Hartford predicted, the Court granted Hartford's motion in full, dismissing all of Plaintiff's extra-contractual claims. *See* Doc. 15. While the Court granted leave to amend, the Court cautioned that mere labels, conclusions, and formulaic recitations of elements were not sufficient; rather, Plaintiff must plead specific facts that demonstrate *plausible*—not merely possible—entitlement to relief. *Id.* at 2:18-25. That did not stop Plaintiff from filing a Second Amended Complaint that continues to plead unsupportable extra-contractual claims. Although Plaintiff added a handful of factual allegations regarding Hartford's decision to obtain an expert records review of her medical records, the new allegations are insufficient as a matter of law to give rise to any of her asserted extra-contractual claims. Specifically, Plaintiff claims:

§ On October 21, 2008, Plaintiff made a demand for the underinsured motorist coverage limits. She further granted Hartford an open-ended extension to evaluate her claim. *See* Doc. 16 at ¶¶ 12-14.

§ On April 21, 2009, Hartford advised Plaintiff that it had reviewed her medical records and concluded that she suffered only a minor cervical strain as a result of the subject accident. As a result, it concluded she had been fully compensated by payments received from the tortfeasor and medical payments coverage. *See id.* at ¶ 15.

§ On June 11, 2009, Plaintiff provided additional medical records to support her policy limits demand. Hartford, however, maintained its position that she had been fully compensated and was not entitled to underinsured motorist coverage. *See id.* at ¶¶ 16-17.

§ At Plaintiff's request for the basis of its decision, Hartford explained that it denied Plaintiff's policy limit demand based on the February 2009 opinion of Dr. Hugh Selznick, a board-certified orthopedic surgeon. *See id.* at ¶¶ 18-21.

§ Hartford's letters did not set forth the standards Hartford followed in evaluating Plaintiff's claim. *See id.* at ¶ 22.

These allegations are insufficient to give rise to any of the extra-contractual claims pled by Plaintiff. As explained in detail in Hartford's second motion to dismiss or, in the alternative, motion for summary judgment, Docs. 17-18, Hartford has no legal obligation to obtain a *single*

expert opinion, let alone multiple opinions every time a claimant submits additional records, especially where Plaintiff only presented records for treatment *after* the date that the expert determined that Plaintiff fully recovered. Nor does it have a legal obligation to gratuitously state its claim handling standards. Moreover, Plaintiff's new allegations still fail to allege any facts regarding Hartford's knowledge, a required element for a bad faith claim, or set forth a viable statutory violation under NRS 686A.310.

Under the circumstances, Hartford met and conferred with Plaintiff and proposed conducting discovery in phases. Declaration of Lindsay Demaree, attached hereto as Ex. 3, at ¶ 11. Phase one would address the contract claim, which involves issues regarding liability and damages from the automobile accident. Phase two would address the extra-contractual claims to the extent that any survive the second motion to dismiss. Not only did Plaintiff decline Hartford's proposal, but she continues to take the position that her prior discovery is proper, even though most, if not all, of it bears no relationship to the allegations in her Second Amended Complaint. *See* Ex. 3, at ¶ 12. For example, Plaintiff seeks:

- § The entire claim file and all claim handling, none of which is relevant to the breach of contract claim. Ex. 1 at Request to Produce No. 1; Interrogatory Nos. 2, 9, 11. *See* Section III, *infra*.

- § All claim handling manuals that "relate in any way to the handling of claims generally or to the handling of claims of like character to the claim at issue." Ex. 1 at Request to Produce No. 3.

- § All training records, manuals, etc. provided to any employee who "worked on" Plaintiff's claim, without any limitations on the effective periods of the documents or on the types of claims addressed by such documents. *Id.* at Request to Produce No. 4.

- § All documents "related to" the calculation of employee bonuses. *Id.* at Request to Produce Nos. 7-8, Interrogatory No. 13.

- § A list of "each and every complaint" filed against Hartford or its subsidiaries for the past five years, with no limits on the type or location of the claim at issue. *Id.* at Interrogatory No. 5.

Plaintiff does not intend to limit herself to written discovery regarding these issues, but also intends to obtain deposition testimony on these same topics. Hartford should not be subjected to the burden of this unrelated discovery under the circumstances.

///

### III. DISCOVERY SHOULD BE CONDUCTED IN PHASES.

#### A. Plaintiff Is Not Entitled to Discovery Simply Because She (Insufficiently) Alleged a Claim.

The mere fact a plaintiff files a complaint "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. The Ninth Circuit has explained that "if the allegations of the complaint fail to establish the requisite elements of the cause of action, our requiring costly and time consuming discovery and trial work would represent an abdication of our judicial responsibility." *Rutman Wine Co.*, 829 F.2d at 738 (quoting *Havoco of America, Ltd. v. Shell Oil Co.*, 626 F.2d 549, 553 (7th Cir. 1980)); *see also Twombly*, 550 U.S. at 559 (recognizing, as a basis for holding plaintiffs must allege facts sufficient to plead a plausible claim for relief, that "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching [summary judgment and jury instruction] proceedings."). Consequently, one of the precise reasons why a motion to dismiss is authorized is to avoid discovery that will be rendered irrelevant if and when the motion to dismiss is granted.

While a dispositive motion does not always stay discovery, the Court has "wide discretion in controlling discovery." *Little v. City of Seattle*, 868 F.2d 681, 685 (9th Cir. 1988); *see also San Francisco Tech., Inc. v. The Glad Prods. Co.*, 2010 WL 2943537, *1 (N.D. Cal. July 26, 2010) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)) (recognizing the court's inherent authority to control the disposition of cases on its docket).[2] "In exercising that discretion, a court may relieve party of the burdens of discovery while a potentially dispositive motion is pending." *Kuzova v. U.S. Dep't of Homeland Sec.*, Case No. 2:10-cv-01711, 2011 WL 3422777 (D. Nev. Aug. 3, 2011) (citing *Turner Broad. Sys., Inc. v. Tracinda Corp.*, 175 F.R.D. 554, 555-56 (D. Nev. 1997)); *see also U.S. Philips Corp. v. Synergy Dynamics Int'l, LLC*, Case No. 2:05-cv-00577, 2006 WL 3453225, *2-3 (recognizing the court's discretion, under Rules 1 and 26, to limit

---

[2] In addition, Rule 26(b)(2)(C) requires the Court to limit the extent of discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). Similarly, Rule 26(c) authorizes the Court to issue an order forbidding, limiting, or specifying the terms for discovery to avoid undue burden or expense upon a showing of good cause. Fed. R. Civ. P. 26(c)(1).

discovery pending the disposition of a dispositive motion).  Moreover, Rule 26 expressly contemplates that discovery may be conducted in phases.  *See* Fed. R. Civ. P. 26(f)(3)(B).

Bifurcation of discovery is appropriate in this case.  Hartford should not be compelled to participate in discovery concerning insufficient claims that are subject to almost-certain dismissal for failure to state a claim.[3]  This is particularly true here as Plaintiff seeks irrelevant and inappropriate discovery regarding matters that do not even concern the allegations in the Second Amended Complaint.  Conducting discovery in phases appropriately balances Plaintiff's need for discovery, on the one hand, with Hartford's desire to avoid unnecessary, expensive, and coercive requests and the efficient and economical resolution of claims, on the other.

### B. Plaintiff's Discovery Requests Are Unduly Burdensome.

The discovery necessary to establish liability and damages for Plaintiff's breach of contract claim differ from the discovery relevant to her extra-contractual claims.  Plaintiff's contract claim centers on the valuation of her personal injuries, requiring discovery of the costs and extent of her accident-related medical treatment and losses.  In contrast, Plaintiff's extra-contractual claims focus on very different issues regarding Hartford's claim handling, as it relates to Plaintiff's factual allegations regarding Hartford's expert records review and the timing of its correspondence with Plaintiff and her counsel.  Discovery related to these extra-contractual claims has no bearing on the amounts Plaintiff is entitled to recover under the policy for an alleged breach of contract.

---

[3] Moreover, even if the Court analyzes the issue under the principals of a *carte blanche* stay of all discovery under *Turner*, *Twin City Fire Ins. Co. v. Employers Ins. of Wasau*, 124 F.R.D. 652, 653 (D. Nev. 1989), and *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 602 (D. Nev. 2011) this motion should still be granted. Under the principals of issuing a stay, a district court may enter a protective order limiting discovery if, "after taking a 'preliminary peek' at the merits of the pending dispositive motion, the court is 'convinced' that the Plaintiff will be unable to state a claim for relief." *Money v. Banner Health*, Case No. 3:11-cv-00800, 2012 WL 1190858, *5 (D. Nev. Apr. 9, 2012) (quoting *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 602 (D. Nev. 2011)); *see also Wegner v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002) (stay appropriate where court "is convinced that the plaintiff will be unable to state a claim for relief"); *Wood v. McEwen*, 644 P.2d 797, 801 (9th Cir. 1981) (per curiam) (same).  The court should also consider the competing goals of Federal Rule of Civil Procedure 1 and determine "whether it is more just to speed the parties along in discovery" or to "limit discovery and other proceedings to accomplish the inexpensive determination of the case." *eBay, Inc.*, 278 F.R.D. at 603.  Likewise, a stay may be appropriate where a pending motion is potentially dispositive on the issue at which discovery is directed and may be decided without additional discovery. *Trzaska v. Int'l Game Tech.*, Case No. 2:10-cv-02268, 2011 WL 1233298, *5 (Mar. 29, 2011) (citing *Mlejnecky v. Olympus Imaging Am., Inc.*, Case No. 2:10-cv-02630, 2011 WL 489743, *6 (E.D. Cal. Feb. 7, 2011).

1  Thus, discovery aimed at Hartford's claim handling is not likely to lead to the discovery of
2  admissible evidence regarding Plaintiff's contract claim and should not be permitted unless and
3  until it is clear that Plaintiff has stated a viable extra-contractual claim. *See, e.g.*, *Gavin's Ace
4  Hardware, Inc. v. Federated Mut. Ins. Co.*, 2011 U.S. Dist. LEXIS 124625, *8, 2011 WL 5104476
5  (M.D. Fla. Oct. 27, 2011) ("[D]iscovery into an insurer's claims handling practices, policies, and
6  protocols is impermissible in a breach of contract claim."); *Royal Bahamian Ass'n v. QBE Ins.
7  Corp.*, 745 F. Supp. 2d 1380, 1381 (S.D. Fla. 2010) ("[E]vidence of an insurance company's
8  claims handling procedures is irrelevant to the determination of coverage and damages."); *Belmont
9  Holdings Corp. v. Unicare Life & Health Ins. Co.*, 2000 U.S. Dist. LEXIS 17768, *5 (E.D. Pa.
10 Dec. 7, 2000) ("Further, BHC has not demonstrated how its allegations regarding claims handling
11 are related to its claims for . . . breach of contract . . . ."); *see also Brantley v. Safeco Ins. Co. of
12 Am.*, 2011 U.S. Dist. LEXIS 138111, *8, 2011 WL 6012554 (W.D. Ky. Dec. 1, 2011) (bifurcating
13 discovery of contract and bad faith claims and recognizing that discovery during contract phase
14 should not require "premature disclosure of [insurer's] internal claims handling").

15       Moreover, despite the limited scope of the Second Amended Complaint, Plaintiff has
16 adamantly pressed forward with overly broad discovery requests that are completely unrelated to
17 any of her factual allegations. For example, in the parties' meet and confer discussions, Plaintiff's
18 counsel was adamant that Hartford must produce, *inter alia*: obsolete training manuals, even
19 though such manuals never applied to Plaintiff's claim for underinsured motorist benefits;
20 information regarding Hartford's employee compensation and bonus structure; and a list of each
21 and every complaint filed against Hartford or its subsidiaries, without any limitation on the
22 jurisdiction, type of claim, or type of complaint. Not only do requests for such unlimited
23 information have no reasonable likelihood of uncovering evidence regarding the tortfeasor's
24 liability for the accident or the Plaintiff's accident-related injuries damages—*i.e.*, information
25 relevant to the contract claim—they have no reasonable likelihood of uncovering evidence
26 regarding Hartford's decision not to have Dr. Selznick provide a second expert opinion or any of
27 the other specific factual allegations pled in the Second Amended Complaint. Further, such
28 discovery, if permitted, would involve Hartford's confidential and proprietary information—

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada  89109

information which, if needlessly disclosed, would be extremely prejudicial.

The minimal significance of such discovery simply cannot justify the burden and expense to Hartford, especially at this early stage where Plaintiff has yet to even plead a valid claim. *See Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 602 (D. Nev. 2011) ("Discovery is expensive."). Further, it has and will continue to invite discovery disputes that may be avoided by simply waiting for the Court to rule on Hartford's second motion to dismiss. While such a delay may be inconvenient for Plaintiff, she could have avoided it by heeding this Court's order and setting forth sufficient facts in her complaint, or simply by not pleading claims that lacked sufficient factual support. And while Plaintiff faces only the possibility of a few months delay,[4] Hartford, in contrast, is at the mercy of Plaintiff's inadequate pleadings and unreasonable discovery requests if discovery is allowed to proceed—an extreme burden emphasized by the fact that a substantial portion of Plaintiff's discovery to date has been aimed at unrelated information regarding Hartford's proprietary and/or confidential data and documents.

This is precisely the situation that the Supreme Court condemned in *Iqbal* and *Twombly*. *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 559; *see also Rutman Wine Co.*, 829 F.2d at 738 ("our requiring costly and time consuming discovery and trial work would represent an abdication of our judicial responsibility" where the complaint fails to state a claim). Indeed, it is well recognized that a plaintiff may abuse discovery to unfairly coerce settlement of non-meritorious claims. *See State Farm Mut. Auto. Ins. Co.*, 804 P. 2d at 1326; Easterbrook, J., DISCOVERY AS ABUSE, 69 B. U. L. REV. 635, 638 (1989) ("Litigants with weak cases have little use for bringing the facts to light and every reason to heap costs on the adverse party -- on this supposition, the one in the right. The prospect of these higher costs leads the other side to settle on favorable terms."). As the Supreme Court has observed, "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching [summary judgment] proceedings." *Twombly*, 550 U.S. at 559.

The Arizona Court of Appeals decision in *State Farm Mutual Automobile Insurance Co. v.*

---

[4] Hartford's first motion to dismiss was filed on February 7, 2012, and decided approximately four months later, on June 18, 2012.

*Superior Court* is instructive. 804 P.2d at 1326. In *State Farm*, the Arizona Court of Appeals held that the trial court abused its discretion by forcing State Farm to respond to the plaintiff's broad discovery requests, which sought information that was not narrowly tailored to the time period or facts at issue in the case. *Id*. at 1326-27. According to the appellate court, "Discovery abuse has become a major problem in civil litigation because of its expense and extortionate effect." *Id.* (citing *Comm'n on the Courts*, Report of the Task Force on Court Productivity, p. 63 (1989)). Such abuse is used in bad faith litigation to coerce settlement of questionable claims, causing the *State Farm* court to recognize that "[t]his kind of coercive settlement, which occurs with some frequency, is a serious indictment of our civil justice system." *Id*. Because the plaintiff's "slender showing of need [stood] in juxtaposition to the enormous burden placed upon State Farm to produce the requested documents," the Court of Appeals vacated the trial court's order compelling State Farm's response.

Just as in *State Farm*, Plaintiff cannot make anything more than a "slender showing of need" (if that) to support her requests for information completely unrelated to any of the factual allegations alleged in the Second Amended Complaint. Such minimal (if any) need does not justify the substantial burdens placed on Hartford, especially at this stage as Plaintiff has yet to plead a valid extra-contractual claim. *See Iqbal*, 556 U.S. at 678-79; *Rutman Wine Co.*, 829 F.2d at 738. Hartford's request to conduct discovery in phases balances Rule 1's competing goals of efficiency and economy. *See* Fed. R. Civ. P. 1 (Rules shall "be construed and administered to secure the just, speedy, and inexpensive determination of every action).

### C. Conducting Discovery in Phases Is Just.

This case is still at the early pleading stages. Hartford has yet to answer due to its pending motion, and trial has yet to be set. A delay at this early stage while the parties await the Court's decision is only minimally inconvenient, and may have no impact at all considering that there is ample discovery to be conducted at present in relation to the breach of contract claim. Moreover, Hartford does not seek a stay of all discovery; it only seeks to limit discovery of Plaintiff's extra-contractual claims until the dispositive motion is decided. Even if Plaintiff is allowed to proceed on these claims, the impact of any minimal delay is far outweighed by the benefits of eliminating

discovery that may be entirely unnecessary, as well as the consequent burdens on judicial resources in the event disputes arise regarding the proper scope of such discovery. Accordingly, justice would be well served by conducting discovery in two phases: one on Plaintiff's contract claim, going forward now, and another on Plaintiff's extra-contractual claims, starting after the disposition of Hartford's motion to dismiss.

## IV. CONCLUSION.

As set forth above, good cause exists for granting Hartford's request to conduct discovery in two phases—one phase on Plaintiff's breach of contract claim and another phase on any extra-contractual claims that remain after Hartford's motion to dismiss is decided.

RESPECTFULLY SUBMITTED this 16th day of July, 2012.

LEWIS AND ROCA LLP

BY: */s/ Lindsay Demaree*
    DARREN T. BRENNER
    Nevada Bar No. 8386
    LINDSAY C. DEMAREE
    Nevada Bar No. 11949
    3993 Howard Hughes Parkway, Suite 600
    Las Vegas, Nevada 89169
    *Attorneys for Defendant Property and Casualty Insurance Company of Hartford*

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109

544542.1

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Corey M. Eschweiler
Adam D. Smith
Glen J. Lerner & Associates
4725 South Durango Drive
Las Vegas, NV  89147

Dated:   July 16, 2012.

>                          */s/ Jessie Helm*
>                          An Employee of Lewis and Roca LLP

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada  89109

544542.1