**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ARLENE HENDERSON, ) | |
| ) | |
| Plaintiff, ) | Case No. 2:12-cv-00149-KJD-PAL |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| PROPERTY AND CASUALTY INSURANCE ) | (Mot Conduct Disc in Phases - Dkt. #21) |
| COMPANY OF HARTFORD, ) | |
| ) | |
| Defendant. ) | |

Before the court is Hartford's Motion to Conduct Discovery in Phases (Dkt. #21) which the court set for hearing on August 21, 2012. Craig Henderson appeared on behalf of the Plaintiff, and Darren Brenner and Lindsay Demaree appeared on behalf of Defendant. The court has considered the Motion, Plaintiff's Response (Dkt. #25), Hartford's Reply (Dkt. #27) and the arguments of counsel at the hearing.

## BACKGROUND

This case arises out of an automobile accident which occurred in Clark County, Nevada on April 3, 2007. The Plaintiff was struck by a third-party driver while operating a Mitsubishi Galant. She was injured and incurred $132,828.42 in medical specials. She settled with the adverse driver's insurance carrier for his $15,000.00 policy limits. At the time of the accident, Plaintiff had an automobile insurance policy with Hartford with uninsured motorist/underinsured motorist ("UM/UIM") coverage of $100,000.00 per person, and up to $300,000.00 per occurrence.

On October 21, 2008, Plaintiff made a policy limits demand on Hartford. Hartford responded in a letter dated April 21, 2009. In the letter Hartford explained that it believed Plaintiff suffered mild cervical strain and that medical records it reviewed indicated she was back to baseline by May 14, 2007. Hartford also took the position that Plaintiff did not suffer lumbar spine injury from the accident and

rejected the policy limits demand.  The letter indicated that Hartford believed that Plaintiff had been fully compensated by payment of the tortfeasor's $15,000.00 policy limits, and the $3,844.88 in medical payments made under the policy.

On June 11, 2009, Plaintiff supplemented her UIM demand and provided Hartford additional medical records she claims substantiated her injuries and resulting medical bills.  On July 6, 2009, Hartford acknowledged receipt of Plaintiff's medical records but continued to deny the claim.  Counsel for Plaintiff sent a letter on June 17, 2010, requesting that Hartford explain the bases for denial of Plaintiff's UIM claim.  Counsel for Hartford responded in an August 4, 2010 letter indicating that Hartford based it's decision to deny Plaintiff's UIM demand on the opinion of Dr. Hugh Selznick from his review of Plaintiff's medical records in February 2009.

Plaintiff filed this action December 8, 2011, in state court asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unfair trade practices pursuant to NRS 680A.310(1) and punitive damages.  On January 27, 2012, Hartford removed this case to this court.  Hartford responded to the complaint by filing a motion to dismiss Plaintiff's extra-contractual claims on February 7, 2012.  The district judge granted Hartford's motion to dismiss counts 2 through 5 of the amended complaint on June 18, 2012, finding that the amended complaint's conclusory assertions failed to allege facts showing a contractual or tortious breach of the covenant of good faith and fair dealing.  The Order (Dkt. #15) also found that the amended complaint did not specify what provisions of NRS 686A.310(1) Defendant was supposed to have violated, and therefore dismissed Plaintiff's unfair trade practices claim.  The order gave Plaintiff leave to amend, and Plaintiff filed a Second Amended Complaint (Dkt. #16) June 16, 2012.  Defendant filed a Motion to Dismiss Claims 2 through 4 of Plaintiff's Second Amended Complaint (Dkt. #17) and a Motion for Partial Summary Judgment (Dkt. #18) on July 6, 2012.  The motions are fully briefed and under submission to the district judge.

In the current motion, Hartford seeks to bifurcate discovery into two phases.  Phase one would consist of discovery on Plaintiff's breach of contract claim which Hartford believes should be limited to issues of the tortfeasor's liability and Plaintiff's damages.  The second phase would consist of discovery on any extra-contractual claims that survive the pending dispositive motions.  Hartford argues that

bifurcation of discovery into two phases will encourage economy and is consistent with the goal of Rule 1 of the Federal Rules of Civil Procedure to procure the just and inexpensive determination of this case. Plaintiff served Hartford with written discovery in April 16, 2012, while Hartford's motion to dismiss was pending. Hartford claims that the written discovery was aimed almost exclusively at the extra-contractual claims. Hartford asserts that the written discovery Plaintiff seeks concerning the handling of Plaintiff's own claim is not relevant as a matter of law unless she is allowed to pursue her extra-contractual claims. Hartford also maintains that Plaintiff's written discovery seeks broad discovery of information relevant only to any potential extra-contractual claims.

Hartford timely served responses to these discovery requests on May 21, 2012. A copy of the responses are attached as exhibits to the motion. Hartford seeks bifurcation of discovery into the two phases described to avoid costly and time consuming discovery on extra-contractual claims it believes will be dismissed. Hartford asks the court to exercise its wide discretion in controlling discovery to limit discovery in phases asserting that the vast majority of discovery the Plaintiff seeks is unduly burdensome. Additionally, Hartford contends that the court should limit the extent of discovery under Rule 26(b)(2)(C) because the burden or expense of the proposed discovery outweighs it likely benefit at this stage of the proceedings. Hartford maintains that unless Plaintiff is able to state viable extra-contractual claims, that Plaintiff's breach of contract claim centers on the valuation of her personal injuries. Therefore, discovery should be limited to the costs and extent of her accident-related medical treatment and losses, and Plaintiff should not be entitled to discovery regarding Hartford's claim handling "as is relates to Plaintiff's factual allegations regarding Hartford's expert records review and the timing of its correspondence with Plaintiff and her counsel."

Hartford argues that Plaintiff's broad discovery would involve disclosure of Hartford's confidential and proprietary information which will be needlessly disclosed and prejudicial if Plaintiff's extra-contractual claims do not survive the pending dispositive motions. Discovery is expensive and Hartford maintains that failure to bifurcate discovery will invite discovery disputes which may be avoided by waiting for the court's decision on the dispositive motions which will likely take only a few months.

///

1        Plaintiff responds that Hartford is seeking to preclude Plaintiff from engaging in any relevant
2 discovery in this insurance bad-faith action.  Plaintiff contends that Hartford has not produced a single
3 document Plaintiff did not already have.  Counsel for Plaintiff points out that the parties had an
4 informal telephonic conference with the undersigned on March 29, 2012.  During that telephonic
5 conference, the disclosure of Hartford's claim notes in initial disclosures was briefly discussed, and the
6 court indicated that the claims notes were relevant to Plaintiff's breach of contract claim and should be
7 produced in initial disclosures.  Hartford did not produce the claims notes in its initial disclosures, and
8 Plaintiff therefore served formal written discovery on April 16, 2012, requesting that Hartford produce,
9 *inter alia*: (1) its complete claims file for the Plaintiff, including claims notes; (2) all claims manuals
10 relating to the handling of claims generally, or handing of claims of like character to the claim involved
11 in this action; (3) all training manuals provided to any employee of Hartford who worked on Plaintiff's
12 claim; (4) all documents relating to the way in which bonuses for any employee who worked on
13 Plaintiff's claim were calculated; and (5) every complaint filed against Hartford by any insured in the
14 last five years.
15        Hartford responded May 21, 2012, by objecting to most of these discovery requests, taking the
16 position that the discovery sought information that was not relevant nor reasonably calculated to lead to
17 the discovery of admissible evidence concerning Plaintiff's claim for breach of contract.  The 1,000
18 pages of documents Hartford produced in its initial disclosures contained only a copy of Plaintiff's
19 insurance policy, medical records, Plaintiff's demand and correspondence exchanged between counsel.
20        Counsel for Plaintiff corresponded with counsel for Hartford attempting to resolve the parties'
21 discovery dispute.  The parties had a lengthy telephonic conference to discuss Hartford's discovery
22 response June 26, 2012.  However, Hartford took the position that it was not obligated to respond to any
23 of Plaintiff's discovery that, in counsel's opinion, related to Plaintiff's extra-contractual claims.
24 Counsel for Hartford also explained that Hartford would be filing this motion to bifurcate discovery,
25 and that unless the court denied the motion, Hartford would not produce any portions of its claims notes
26 to the Plaintiff.  The parties also had a discussion about the other categories of documents Plaintiff
27 seeks.
28 / / /

1      Plaintiff argues that the five categories of discovery she seeks are relevant and discoverable
2 within the meaning of Rule 26(b)(1).  The party opposing discovery has the burden of showing the
3 discovery is overly broad, unduly burdensome, or not relevant, and Hartford has not met its burden.
4 Plaintiff maintains that she has adequately plead her extra-contractual claims in her second amended
5 complaint.  Plaintiff argues that bifurcating discovery is unnecessary, will be inefficient and will
6 require depositions of the adjusters handling Plaintiff's claim to be taken a second time.  Plaintiff also
7 argues that the breach of contract and bad faith claim overlap and involve the same sequence of events.
8 Bifurcated discovery, it is argued, will force the parties to seek repeated judicial intervention to
9 determine what discovery is proper for what phase of discovery.  Plaintiff points out that under Nevada
10 law a Plaintiff is not required to establish tortfeasor liability or the extent of damages before instituting
11 a bad faith claim.  Plaintiff cites *Drennan v. Maryland Casualty Company*, 366 F.Supp.2d 1002, 1007
12 (D. Nev. 2005) and *Cook v. United Services Automobile Association,* 169 F.R.D. 369, 362 (D. Nev.
13 1996) for the proposition that joint discovery of contractual and extra-contractual claims is more
14 convenient and consistent with judicial economy.

15      Hartford replies that it is not seeking to deprive Plaintiff of discovery relevant to her breach of
16 contract claim.  Plaintiff's response to the motion to dismiss and motion for summary judgment do not
17 claim that Plaintiff needs any discovery to respond to the motion for summary judgment.  Hartford
18 argues that Plaintiff cannot demonstrate that Hartford's decision to deny benefits was unreasonable
19 because its decision "follows an evaluation from a qualified medical expert, Dr. Hugh Selznick, who
20 determined that the majority of the treatment Plaintiff received was related to pre-existing injuries."
21 Hartford also claims that Plaintiff's own orthopaedic surgeon, Dr. John Thalgott, concurs with Dr.
22 Selznick's opinions.  Plaintiff has not presented evidence that any expert will support her causation
23 theory and has no evidence "that Hartford ignored such information when making its claim decision."
24 Hartford also claims that Plaintiff has not cited any legal authority supporting her claim "that discovery
25 on her contract claim cannot be distinguished from discovery on her extra-contractual claims."  On this
26 basis alone, the court should grant Hartford's motion.  Plaintiff has not provided any analysis
27 concerning how claims notes, bonus information or anything else she seeks is relevant to a breach of
28 contract claim.  Rather, she bases her arguments on counsel's recollection of an informal conference

call with the court. Counsel for Hartford acknowledges that the parties did discuss the claims notes with the court in the telephonic conference; however, the court did not rule as no briefs were on file.

Citing *Drennan v. Maryland Casualty*, Hartford argues that absent unusual circumstances, which are not present in this case, breach of an uninsured motorist policy involves two issues. First, who was at fault for the accident, and second, what was the insured compensated, i.e., whether the insured has any damages in excess of the tortfeasor's policy limits which were paid. Plaintiff's second amended complaint alleges that Hartford breached the policy by refusing to properly compensate her. Hartford maintains that this breach of contract claim is the same type of fault and valuation dispute at issue in *Drennan* which does not involve a question of how Hartford handled the claim. Rather, for Plaintiff to prevail, she must demonstrate the tortfeasor's fault and her own damages. If she cannot establish a breach of contract claim, there is no bad faith claim as a matter of law. As Plaintiff has not yet plead a valid extra-contractual claim, the doors to extra-contractual discovery "should not be unlocked" at this stage.

Finally, Hartford points out that Plaintiff has not filed a motion to compel. Hartford moved for an order to conduct discovery in phases to resolve the parties' ongoing dispute on the appropriate scope of discovery which the parties have been unable to resolve on their own. Thus, the only limited question before the court is whether it should exercise its discretion and order phased discovery on Plaintiff's extra-contractual claims. Even if the extra-contractual claims survive, Hartford disagrees that Plaintiff has properly limited the scope of her discovery or that she has completed the meet-and-confer process. Hartford has produced the documents related to the breach of contract claim, including, records obtained from Plaintiff's medical providers and the reports of Hartford's expert, Dr. Selznick. Hartford also produced a supplemental report from Dr. Selznick on July 27, 2012. Contrary to arguments Plaintiff made in her response, Hartford's motion to bifurcate specifically addresses the broad discovery Plaintiff seeks which Hartford claims is not relevant to Plaintiff's breach of contract claim. Hartford suggests that bifurcation will avoid motion practice concerning the scope of discovery pending a decision on the dispositive motions and will likely render the entire issue moot.

///

///

# DISCUSSION

Although styled a motion to conduct discovery in phases, this motion involves a dispute about the appropriate scope of discovery while a dispositive motion is pending on some, but not all, of Plaintiff's claims. Hartford asks that the court order discovery to be conducted in phases, in part, to avoid future disputes about the appropriate scope of discovery in this case while the district judge considers its pending dispositive motions. On the other hand, Hartford argues no motion to compel is on file, suggesting the court need not decide the permissible scope of discovery to resolve this motion. Hartford concedes the parties have met and conferred and have reached an impasse. The court will therefore decide the scope of discovery dispute to avoid future motion practice on the same issue.

.Fed. R. Civ. P. 26(b) was amended in 2000 and permits discovery into "any matter, not privileged, that is relevant to the claim or defense of any party." The stated purpose of the amendment was not only to narrow the scope of discovery, but also to address the rising costs and delay of discovery. *See Graham v. Casey's General Stores*, 206 F.R.D. 251, 253 (S.D. Ind. 2002); Advisory Committee Notes to 2000 Amendments to Fed. R. Civ. P. 26. A number of courts and commentators have addressed the scope of discovery since the 2000 Amendments to Rule 26(b). There seems to be a general consensus that the Amendments to Rule 26(b) "do not dramatically alter the scope of discovery." *World Wrestling Fed'n Entm't, Inc., v. William Morris Agency, Inc.*, 204 F.R.D. 263, 365 n.1 (S.D.N.Y. 2001). Most courts which have addressed the issue find that the Amendments to Rule 26 still contemplate liberal discovery, and that relevancy under Rule 26 is extremely broad. *See, e.g., Saket v. American Airlines, Inc.*, 2003 WL 685385, at *2 (N.D. Ill. Feb. 28, 2003); *Richmond v. UPS Service Parts Logistics*, 2002 WL 745588, at *2 (S.D. Ind. Apr. 25, 2002). *See also Johnson v. Mundy Indus. Contractors, Inc.*, 2002 WL 31464984, at *3 (E.D.N.C. Mar. 15, 2002) (stating that the 2000 Amendments to Rule 26(b)(1) are "basically a semantic change unlikely to have much salutary effect on the conduct of discovery . . . .").

However, a number of courts have concluded that the 2000 Amendments to Rule 26(b)(1) "mandate greater scrutiny" of discovery requests. *Surles v. Air France*, 2001 WL 1142231, at *1 n.3 (S.D.N.Y. Sept. 27, 2001) ("it is intended that the scope of discovery be narrower than it was, in some meaningful way"). *Sanyo Laser Prods. Inc. v. Arista Records, Inc.*, 214 F.R.D. 496, 500 (S.D. Ind.

2003) ("the scope of discovery has narrowed somewhat under the revised rule. The change, while meaningful, is not dramatic, and broad discovery remains the norm.") Several courts have concluded although there is no fundamental difference between the current and previous versions of Rule 26(b)(1), the difference can be ascertained by applying the principles in Rule 26(b)(2). As the court noted in *Thompson v. Dept. of Hous. and Urban Dev.*,

> Lest litigants and the court become consumed with the philosophical exercise of debating the relevance between discovery relevant to the "claims and defenses" as opposed to the "subject matter" of the pending action – the jurisdictional equivalent to debating the number of angels that can dance on the head of a pin – the practical solution to implementing the new Rule changes may be to focus more on whether the requested discovery makes sense in light of the Rule 26(b)(2) factors, than to attempt to divine some bright line difference between the old and new rule. Under this approach, when confronted with a difficult scope of discovery dispute, the parties themselves should confer, and discuss the Rule 26(b)(2) factors, in an effort to reach an acceptable compromise, or narrow the scope of their disagreement.

199 F.R.D. 168, 172 (D. Md. 2001). *Accord Sanyo Laser Products, Inc., v. Arista Records, Inc.*, 214 F.R.D. 496, 500 (S.D. Ind. 2003). In deciding whether to restrict discovery under Rule 26(b)(2) "the court should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." *Smith v. Steinkamp*, 2002 WL 1364161, at *6 (S.D. Ind. May 22, 2002) (*quoting Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (internal quotations omitted)). *See also Rowlin v. Alabama Dep't. of Pub. Safety*, 200 F.R.D. 459, 461 (M.D. Ala. 2001) ("courts have the duty to pare down overbroad discovery requests under Rule 26(b)(2) . . . The court should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, discounted by society's interest in furthering the truthseeking function") (*citing Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033-34 (9th Cir. 1990)).

The court has broad discretion in controlling discovery. *Little v. Seattle,* 863 F.2d 681, 685 (9th Cir. 1988). The court will exercise its discretion to limiting discovery while Defendant's two dispositive motions are pending challenging Plaintiff's extra-contractual claims which the district judge has already dismissed once with leave to amend. Plaintiff was granted leave to amend, filed an amended complaint, and Defendant filed dispositive motions again claiming Plaintiff has not plead, and

cannot prove, valid extra-contractual claims. Plaintiff responded to the motions and did not claim that any discovery was required to do so. While the motions were under submission Plaintiff served broad written discovery requests seeking discovery of matters primarily relevant to her extra-contractual claims.

During oral argument, counsel for Hartford was insistent that Plaintiff's claim file and the adjuster's claims notes were not relevant or discoverable to her breach of contract claim. The court disagrees. Plaintiff's complaint alleges that she was involved in an accident with an underinsured motorist, that her damages exceeded the tortfeasor's $15,000.00 policy limits, and that Hartford breached its contract by denying her claim for uninsured motorist benefits. Hartford correctly points out that under Nevada law, Plaintiff cannot prevail on a bad faith claim unless she first establishes a breach of contract claim. However, it does not follow that how Hartford handled Plaintiff's claim for underinsured motorists benefits is neither relevant nor discoverable on the issue of whether Hartford breached its contract to provide underinsured motorist benefits according to its policy terms, and mandatory state statutory requirements. A bad faith claim requires proof that the denial of benefits was unreasonable. However, an insurer may breach an insurance contract with its insured if it fails to pay benefits due under the policy, that is, it can breach its contract by an incorrect, but not unreasonable denial. The court finds that the information the insurer had in reaching its decision to deny benefits, and its rationale for denying benefits is relevant and discoverable on both issues.

In this case, the parties' dispute whether the tortfeasor was liable, and if so, the extent of Plaintiff's damages that are causally related to the accident. The court finds that the claim file is relevant and discoverable within the meaning of Rule 26(b)(1) to Plaintiff's breach of contract claim. The claims file should contain an evaluation of whether the Plaintiff was, in fact "underinsured" within the meaning of the policy and mandatory state statues, and therefore whether Hartford was contractually obligated to offer some or all of its policy limits to the Plaintiff to resolve her claim. It should also contain information about how Hartford construed its obligations to its insured, and interpreted its policy provisions regarding the conditions under which underinsured motorist benefits were or were not payable. How Hartford valued Plaintiff's claim is relevant to her breach of contact claim as well as her bad faith claim. The fact that the claims file may include information that may overlap discovery of

Plaintiff's breach of contract and extra-contractual claims does not preclude discovery during the initial phase of discovery Hartford asks the court to impose over Plaintiff's objection.

The court agrees that, because the district judge has already once dismissed Plaintiff's extra-contractual claims, and Plaintiff seeks broad discovery relevant only these extra-contractual claims, that discovery should be bifurcated while the dispositive motions are pending. Therefore, Hartford need not further respond to Plaintiff's written discovery requests for discovery of: all claims manuals relating to the handling of claims generally, or handling of claims of like character to the claim involved in this action; all training manuals provided to any employee of Hartford who worked on Plaintiff's claim; all documents relating to the way in which bonuses for any employee who worked on Plaintiff's claims were calculated; and every complaint filed against Hartford by any insured in the past five years. However, Hartford shall be compelled to produce its complete claims file for the Plaintiff, including claims notes.

**IT IS ORDERED** :

1. Hartford's Motion to Conduct Discovery in Phases (Dkt. #21) is **GRANTED**. However, Hartford shall produce its complete claims file for the Plaintiff, including claims notes in Phase 1 discovery.

2. In the event the district judge denies some or all of the pending dispositive motions, Hartford shall have 14 days from decision of the motions to supplement its discovery responses as to any claims that survive.

Dated this 27th day of August, 2012.

_____
Peggy A. Leen
United States Magistrate Judge